UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DANA CAPLAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 14 C 8235 |
| v. | ) |
| | ) Judge Ellis |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Defendant. | ) |

**UNITED STATES' MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Plaintiff Dana Caplan seeks to hold the United States liable for injuries he suffered while riding a scooter (essentially a motorized wheelchair) that he claims was unable to support his weight at the Lovell Federal Healthcare Center, a VA hospital. The United States is entitled to summary judgment on Caplan's complaint. First, there is no evidence that any employee of the United States provided Caplan with the scooter, and therefore the United States cannot be held responsible for the accident. Second, even if Caplan could show that the VA provided him with the scooter, he cannot show the necessary elements to establish liability under Illinois law, which applies Restatement (Second) of Torts § 388, Liability for Persons Supplying Chattels for the Use of Others. Because the undisputed facts show that Caplan cannot succeed on his claim, the court should enter summary judgment in favor of the United States.

**Facts**

Since at least October 1999, Caplan had sought and received medical treatment at the Captain James A. Lovell Federal Healthcare Center ("Lovell"). Joint Statement of Undisputed Material Fact ("SOF") ¶ 10. Caplan is 6 foot 5 inches and weighs over 420 pounds. SOF ¶ 9. Since 2008, Caplan has used scooters to get around. SOF ¶¶ 12-14. When he came in to Lovell

for treatment, he would use either his own scooter (which had been provided to him by the VA for his daily use) or one of the scooters at Lovell reserved for patient use. SOF ¶ 15.

As of the date of the accident, Lovell VA provided two types of scooters to patients: the Pride Maxima and the Pride Victory 9. SOF ¶ 15. Both are three-wheel scooters. *Id.* The Pride Victory 9 scooter has a maximum weight capacity of 300 pounds, while the Pride Maxima scooter has a weight capacity of 400 pounds. SOF ¶ 17. Pride Victory 9 scooters and Pride Maxima scooters are not difficult to tell apart. SOF ¶ 18. The Pride Maxima scooter is much larger than the Pride Victory 9 scooter, the seats on the scooters are different, and the Pride Maxima scooter says "Maxima" on the side while the Pride Victory 9 scooter says "Victory 9." *Id.* Prior to the date of his accident, Caplan had always used Pride Maxima scooters and had never used a Pride Victory 9. SOF ¶ 19. Caplan's personal scooters, which he used in his daily life, were Pride Maxima scooters. SOF ¶¶ 13-14.

To obtain a scooter from Lovell for use at their appointments, patients were encouraged to call in advance to reserve a scooter. SOF ¶ 22. When a patient would call in to reserve a scooter, he or she would speak to either a VA volunteer or with a vocational rehabilitation unit ("VRU") patient, and his or her name would be added to the scooter request list. SOF ¶ 23. VRU patients are rehabilitating at a VA hospital and are enrolled in a program that allows them to do some work at the hospital. SOF ¶ 24. The purpose of the VRU program is to provide therapeutic work experience to patients. *Id.* When calling in, a patient could also inform the volunteer or VRU patient that he or she required a larger scooter. SOF ¶ 23.

After reserving a scooter, when a patient would arrive at Lovell for an appointment, the patient could drive his or her vehicle to the circle drive outside the main entrance to Lovell and leave the keys with a valet for the vehicle to be parked. SOF ¶ 25. The valets working at Lovell

2

were not employees of the VA. SOF ¶ 26. They were employees of Advantage Valet, a valet company that the VA hired as a contractor. *Id.* If the patient was able to walk a short distance, he or she could walk into the hospital to request the scooter from the VA volunteer or VRU patient stationed at the front desk where the keys to the scooters are kept. SOF ¶¶ 27-28. If the patient was unable to physically walk in to the front desk to pick up the scooter, the VA volunteer or VRU patient at the front desk would typically take the scooter out to the patient's car. SOF ¶ 29. Occasionally a valet would (against VA policy) bring a scooter out to a patient at his or her car. SOF ¶ 30.

The VA volunteers and VRU patients at the front desk kept the keys to the scooters in a plastic Tupperware container placed on an unlocked shelf on the desk. SOF ¶ 31. The valet stand was in the entryway of Lovell, near the front desk. SOF ¶ 32. From their stand, the valets could see the front desk from their position, and they would have had the opportunity to take keys to the scooters on their own if they had wanted to. *Id.* The VA had brochures available at the front desk to let patients know the rules for use of the scooters. SOF ¶ 33. The brochures stated that the weight limit for the smaller Victory 9 scooters was 300 pounds. SOF ¶ 34.

On March 9, 2012, Caplan drove to Lovell to attend a scheduled physical therapy appointment. SOF ¶¶ 41, 43. According to Caplan, he had called in advance of his March 9, 2012, appointment to reserve a scooter, though he does not recall who he spoke with. SOF ¶ 42. On that call, Caplan says he identified himself and said he needed a "fat boy" scooter because he weighed over 400 pounds. *Id.* When Caplan arrived at Lovell, he pulled into the circle drive, and began to wait for the valet. SOF ¶ 43. As he waited, he became flustered and anxious because he was running late for the appointment, and he believed it would be difficult to

reschedule. SOF ¶ 44-46. The valet eventually arrived, and Caplan told him his name and that he needed a scooter brought out to his car. SOF ¶ 47.

Shortly thereafter, the same valet returned, bringing a three-wheel Pride Victory 9 scooter to the driver's side door of Caplan's Escalade. SOF ¶ 49. The valet told Caplan it was the only scooter that had a charge. SOF ¶ 50. Before Caplan got on the scooter, he looked at it and saw that the word "Victory" was printed on it, and he knew the scooter was a Pride Victory 9. SOF ¶ 53. Prior to his accident, Caplan had always used Pride Maxima scooters, and he knew the difference between the Pride Victory 9 and the Pride Maxima, but he believed the Pride Victory 9 scooter was the only scooter available to him. SOF ¶ 55-56. After recognizing that the scooter was a Pride Victory 9, Caplan decided to get on anyway. SOF ¶ 57.

Caplan began driving the scooter forward, towards the front of his truck, and he made a U-turn to the left to come around the back of his truck. SOF ¶ 59. As he made it about halfway past the back of his truck, he testified that the scooter tipped to the right. SOF ¶ 60. Caplan does not know whether any of the scooter's wheels came off the ground when he felt like the scooter was going to tip. *Id.* Caplan stuck out his right leg and planted his right foot on the ground to try to keep the scooter from tipping over. SOF ¶ 61. When Caplan planted his foot, he felt an intense pain in his right knee, and he later learned that he had torn his right quadriceps tendon. SOF ¶ 62. Ultimately, the scooter did not tip over, and Caplan did not fall off of the scooter onto the ground. SOF ¶ 63.

Caplan does not know the name of the valet who gave him the scooter, and he has not seen the valet since his accident. SOF ¶ 48. The only two male valets who worked at Lovell on the date of Caplan's accident were Nathanial Forcier and Steven Negron. SOF ¶ 50. Negron denied being the valet who brought Caplan the scooter. *Id.* Forcier testified that he might have

been the valet who brought Caplan the scooter on the date of his injury, but he could not identify who was working at the front desk on that date. SOF ¶ 51. Caplan did not see or speak to anyone at the front desk before getting on the scooter. SOF ¶ 52. VRU patient Daryl Thomas was scheduled to work at the front desk at the time of Caplan's injury. *Id.* Despite extensive discovery, the parties have not uncovered evidence identifying anyone else who was at or assigned to be at the front desk at that time. *Id.*

Caplan underwent surgery at Lovell for his injury. SOF ¶ 66. On November 14, 2013, Caplan filed an SF-95 claim for damages claiming $500,000 in personal injury damages caused by the United States. SOF ¶ 67.

**Argument**

Summary judgment is warranted when the nonmoving party cannot establish an essential element of its case on which it will bear the burden of proof at trial. *Kidwell v. Eisenhauer*, 679 F.3d 957, 964 (7th Cir. 2012); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("[T]he plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."). Conclusory statements unsupported by evidence are insufficient to defeat summary judgment. *Majors v. General Elec. Co.*, 714 F.3d 527, 540 (7th Cir. 2013). "A plaintiff cannot withstand summary judgment by arguing that although in pretrial discovery he has gathered no evidence of the defendant's liability, his luck may improve at trial." *DF Activities Corp. v. Brown*, 851 F.2d 920, 922 (7th Cir. 1988). As the Seventh Circuit has stated, "summary judgment is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Springer v. Durflinger*, 518 F.3d 479, 484 (7th

Cir. 2008) (internal quotation omitted).  A plaintiff's "hunch" about what might have happened will not allow him to survive summary judgment.  *Id.*

I.     **The United States Is Entitled to Summary Judgment.**

   A.     **Caplan Has No Evidence That Any VA Employee Provided the Scooter.**

In order to succeed on his FTCA claim against the United States, Caplan must show that an *employee* of the United States committed a tortious act.  *See* 28 U.S.C. § 1346(b)(1) (court has jurisdiction over tort claims relating to any "act or omission of any employee of the Government while acting within the scope of his office or employment"); 28 U.S.C. § 2679(b)(1).  Caplan alleges that the tortious act was providing him with a Pride Victory 9 scooter that allegedly could not safely support his weight.  To succeed on his claim Caplan must, at a minimum, show that the United States was responsible for providing him with the scooter.  But Caplan has no evidence that any employee of the United States gave him the scooter.  Rather, the undisputed evidence shows that a *contractor* valet took the scooter to Caplan.  SOF ¶¶ 26, 47-49.  Where the valet got the scooter is less clear, but the evidence suggests two plausible possibilities.

The first possibility is that the valet got the scooter from VRU patient Daryl Thomas.  The parties agree that VRU patient Thomas is the only individual they can identify who was assigned to the front desk at the time of the accident, and it is possible that he could have given the valet keys to the scooter.  SOF ¶ 52.  But the United States is not liable for any negligent action VRU patient Thomas (or any other VRU patient) might have performed.  VRU patients (who are patients receiving medical care from the VA) are, by statute, not "considered as employees of the United States for any purpose."  38 U.S.C. § 1718.  This statutory language is very clear, and it means that VRU patients are not employees of the United States for FTCA liability.  *Id.*; Vet. Aff. Op. Gen. Couns. Prec. 31-91, 1991 WL 11692154, at *2 (D.V.A. Mar. 11, 1991) ("The real purpose of the act, therefore, was to make the legislative determination that

members and patients doing work for therapeutic purposes in hospitals and domiciliaries would not be considered employees of the United States for any purpose."); *Foster v. United States*, No. 14 C 719, 2015 WL 727933 at *2 (D. Ariz. Feb. 19, 2015) (granting motion to dismiss FTCA lawsuit against the United States on ground that the allegedly negligent individual working on behalf of the United States was a paid patient in a vocational rehabilitation program). In *Foster*, the plaintiff alleged that a vocational rehabilitation patient caused her injury when he negligently operated a government motor vehicle. *Id.* at *1. The plaintiff sought to sue the United States for the patient's negligence, but the court held that the patient was not an employee of the United States under 38 U.S.C. § 1718(a) and it dismissed the plaintiff's claim. *Id.* at *2. Like the driver in *Foster*, VRU patient Thomas was not an "employee of the United States for any purpose." 38 U.S.C. § 1718. The United States, therefore, is not liable for any negligence that Thomas or any other VRU patient might have committed.

The second possibility is that the valet took the scooter himself. The parties agree that the valet would have had the opportunity to take the keys to the scooter himself without obtaining permission from anyone at the front desk of the hospital. SOF ¶ 32. At the time of Caplan's accident, the keys to the scooters were kept in a plastic Tupperware container at a desk near the Lovell entrance. SOF ¶ 31. The scooter keys were not locked away, and the valets had a clear line of sight to the front desk to observe the location of the keys. SOF ¶¶ 31-32. The valets testified that they knew where the scooter keys were kept and that if they had wanted to, they could have gone and taken the keys themselves. SOF ¶ 32. But the United States is not liable for the actions of the valets. The FTCA provides a limited waiver of the federal government's sovereign immunity. *Alinsky v. United States*, 415 F.3d 639, 643 (7th Cir. 2005). It limits a plaintiff's right to sue to those instances in which an "employee of the Government"

has committed a tort. 28 U.S.C. § 1346(b)(1). The statute expressly states that it does not create a cause of action for the torts of "any contractor with the United States." 28 U.S.C. § 2671; *see also Alinsky*, 415 F.3d at 645 (holding that the United States is not liable for the negligence of any contractor); *Bailor v. Salvation Army*, 51 F.3d 678, 686 (7th Cir. 1995) ("The Federal Tort Claims Act permits the United States to be sued for injuries resulting from the negligent actions committed by an employee of the government, but expressly precludes liability for the acts of any contractor of the government."). Because the valets were third-party contractors employed by a valet company, the United States is not liable for any negligent action they might have performed.

According to his letter regarding his cross-motion for summary judgment, Caplan will attempt to proceed on a theory that either a VRU patient or a volunteer negligently gave the scooter to the valet. This theory fails to acknowledge that the United States is not liable for a VRU patient's negligent actions. Further, Caplan has not developed affirmative evidence showing that any employee of the United States was directly involved in providing the scooter to Caplan on the day of the accident. Caplan does not know the name of the valet who gave him the scooter. SOF ¶ 48. His attorney deposed both of the male valets who worked at Lovell at the time of Caplan's accident, and one denied giving him the scooter while the other (Nathaniel Forcier) admitted he "could have been" the person who brought the scooter to Caplan, but he was not sure. SOF ¶¶ 50-51. If Forcier did give Caplan the scooter, he still does not help Caplan because Forcier could not remember who, if anyone, was at the front desk on that date. SOF ¶ 51. Without being able to identify anyone at the front desk Caplan cannot *prove* that the United States was negligent. Because there is no affirmative evidence of who gave the scooter to the valet, Caplan's claim against the United States fails.

8

Caplan will presumably argue that an employee of the United States *must have* given the valet the scooter. But there is no *evidence* that is true—in fact, the evidence reveals that the two most likely scenarios are that either the valet received the scooter from VRU patient Daryl Thomas who was stationed at the front desk, or that the valet obtained the scooter on his own. In either event, the United States is not responsible.

To maintain his claim, Caplan would need an inference that some United States employee (not a VRU patient) gave the scooter to the valet.[1] But this inference would be pure speculation, since Caplan has no evidence even placing any United States employee at the scooter desk at the time of the accident. At summary judgment, Caplan is entitled only to *reasonable* inferences, not to speculative inferences. "Inferences that are supported only by speculation or conjecture will not defeat a summary judgment motion." *Herzog v. Graphic Packaging Int'l, Inc.*, 742 F.3d 802, 806 (7th Cir. 2014).

Because Caplan has the ultimate burden of proof in this case, he "must present *affirmative evidence* in order to defeat a properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986) (emphasis added). Where a plaintiff cannot produce evidence that the defendant caused his injury, summary judgment is appropriate even if it remains theoretically possible that the defendant caused the injury. *See Adkins v. Meijer Stores Ltd. P'ship*, 256 Fed. App'x 845, 847-48 (7th Cir. 2007) (affirming summary judgment where evidence showed only that *something*—possibly a crack in the asphalt, but possibly something else—caused plaintiff to trip and fall in defendant's parking lot). The court's responsibility on summary judgment to interpret the evidence in the light most favorable to

---

[1] Caplan would also need an inference that the unidentified United States' employee somehow knew the valet would give the scooter to a patient of Caplan's size. He has no affirmative evidence on that issue either.

Caplan does not permit it to "fill in evidentiary gaps that [Caplan] has left wide open." *Id.* at 848. Here, Caplan has not developed evidence that any United States employee was responsible for providing the scooter to Caplan, and in fact the evidence shows just the opposite. It would be improper for the court to fill in this "gap" by speculating that some unknown United States employee might have given the scooter to the valet. *Id.*

Because the inferences that Caplan would need in order to prevail are purely speculative, and because he does not have affirmative evidence that an employee of the United States committed any tortious act, no reasonable jury could find for Caplan, and summary judgment is appropriate. *Collins v. American Red Cross*, 715 F.3d 994, 999 (7th Cir. 2013); *Trask-Morton v. Motel 6 Operating L.P.*, 534 F.3d 672, 682-83 (7th Cir. 2008) (affirming summary judgment where jury could not find for plaintiff "without resorting to impermissible speculation").

**B.      Even if the VA Provided the Scooter, It Was Not Negligent.**

Even assuming Caplan could prove that a United States employee gave Caplan the scooter, summary judgment would still be appropriate because that action was not negligent under applicable Illinois law. *Augustus v. United States*, 732 F.3d 749, 752 (7th Cir. 2013) ("the FTCA incorporates the substantive law of the state where the tortious act or omission occurred").

Caplan's theory is that the VA provided him with a scooter that was insufficient to support his weight and the VA knew or should have known the scooter would be dangerous for Caplan's use. Illinois applies Restatement (Second) of Torts § 388 to determine whether a defendant is liable when it provides a chattel known to be dangerous for its intended use. *See Baylie v. Swift & Co.*, 27 Ill. App.3d 1031, 1042 (Ill. App. Ct. 1975) (applying Restatement § 388); *Schaefer v. Universal Scaffolding & Equip., LLC*, No. 10 C 791, 2015 WL 326876, *6 (S.D. Ill. Jan. 23, 2015) (same). Restatement (Second) of Torts § 388 states as follows.

> One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier
> (a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and
> (b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and
> (c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous.

Restatement (Second) of Torts § 388.

To succeed on his claim, Caplan must prove each of the three elements required by the Restatement. But he has no evidence sufficient to satisfy any of them. If the court concludes that Caplan lacks evidence sufficient to establish even one of the three required elements, summary judgment is proper.

Caplan cannot establish the first element because the VA did not know and had no reason to know that its Victory 9 scooter would be used by a patient of Caplan's size. There is no evidence that anyone except for the valet who brought the scooter out to the vehicle knew that the scooter would be used by someone of Caplan's size. Even if Caplan could prove that a VA employee gave the scooter to the valet (which he cannot), he would also need to show that the VA employee knew or had reason to know that the valet would give the scooter to a patient who was larger than the recommended maximum weight. But there is no evidence that the valet would have told the hypothetical United States employee at the front desk that the scooter was for Caplan, and no evidence that the hypothetical United States employee would have known Caplan's weight.

Caplan cannot establish the second Restatement element either because the VA *did* have reason to believe that Caplan would recognize that the smaller scooter the valet offered to him

11

might be dangerous. Caplan testified at his deposition that when he called in to reserve scooters from the VA, he would tell whoever answered the phone that he needed a larger Maxima scooter because of his weight. SOF ¶ 42. And when the VA provided Caplan with scooters for his home use, it gave him the larger Maxima scooters. SOF ¶¶ 13-14. Further, the scooters are not difficult to tell apart, and Caplan had years of experience on scooters. SOF ¶¶ 12-15, 18. The undisputed facts show that the VA had ample reason to believe that Caplan would recognize the scooter being offered to him was a smaller Victory 9 scooter rather than a larger Maxima (and as will be discussed below, Caplan admits that he did in fact recognize that the valet was giving him a smaller scooter). Caplan understood that the reason he needed to use the Maxima scooters was because he was too heavy for the smaller Victory 9 scooters. SOF ¶ 53. Because the undisputed facts demonstrate that the VA had reason to believe Caplan would realize that riding on the Victory 9 would be dangerous for someone of his size, Caplan's claim must fail. *See Jackson v. Reliable Paste & Chem. Co.*, 136 Ill. App. 3d 766, 771 (Ill. App. Ct. 1985) (finding "no duty by the defendants to warn plaintiffs of that which the plaintiffs already knew"); *Crook v. Farmland Indus., Inc.*, 54 F. Supp.2d 947, 958 (D. Neb. 1999) ("[I]f a user actually knows of the danger, a failure to warn cannot be a proximate cause of the injury.").

Caplan cannot establish the third Restatement element either because the undisputed evidence shows that the VA exercised reasonable care to notify its patients, including Caplan, that individuals who weighed over 300 pounds should not ride on the Victory 9 scooters. The VA created brochures that clearly stated that a 300 pound weight limit applied to the smaller Victory 9 scooters. SOF ¶ 34. These brochures were available at the front desk to let patients know the rules for use of scooters. SOF ¶ 33; *see Gillman v. Crown Equip. Corp.*, No. 95 C 1914, 1996 WL 464224, *3 (N.D. Ill. Aug. 12, 1996) (granting summary judgment where

defendant's operator's manual warned against using product in manner plaintiff used it); *Wade v. Diamant Boart, Inc.*, 179 Fed. App'x 352, 355 (6th Cir. 2006) (granting summary judgment where manual warned against risk that befell plaintiff). And the VA's warnings were effective. Caplan understood that he needed to use the larger scooters because of his weight. SOF ¶ 53. Therefore, he cannot prove that the VA failed to exercise reasonable care to warn him about the smaller scooters.

Because the undisputed facts demonstrate that Caplan cannot satisfy any of the three elements required under the Restatement and Illinois law, the United States is entitled to summary judgment.

## II. The United States Is Entitled to Summary Judgment Limiting Caplan's Damages to No More Than $500,000.

Alternatively, the court should grant the United States summary judgment with respect to damages, and order that Caplan may not recover more than the $500,000 he demanded in his administrative proceeding. Caplan asserts his claims under the FTCA, which, as noted earlier, is a limited waiver of the United States' sovereign immunity. *Warrum v. United States*, 427 F.3d 1048, 1049-50 (7th Cir. 2005). To bring a lawsuit under the FTCA, a claimant must first exhaust his administrative remedies by presenting the claim to the appropriate federal agency, and the agency must issue a final denial of his claim in writing. *Id.* at 1050; 28 U.S.C. § 2675(a). The claimant may thereafter file a lawsuit, but the lawsuit "shall not be instituted for any sum in excess of the amount of the claim presented to the federal agency, except where the increased claim is based upon newly discovered evidence not reasonably discoverable at the time of presenting the claim to the federal agency, or upon allegation and proof of intervening facts relating to the amount of the claim." 28 U.S.C. § 2675(b).

Caplan filed an administrative claim regarding this incident with the VA on an SF-95 form that demanded $500,000 in damages. SOF ¶ 67. He has not identified any newly discovered evidence or intervening facts that would increase his damages. Therefore, Caplan is statutorily barred from seeking more than $500,000 in damages (even though he purports in his complaint to seek $1,205,600 in damages). 28 U.S.C. § 2675(b); *Davis v. United States*, 244 F. Supp. 2d 878, 880 (N.D. Ill. 2002).

## Conclusion

For the foregoing reasons, this court should enter summary judgment in favor of the United States. Alternatively, the court should limit Caplan's damages to no more than $500,000.

Respectfully submitted,

ZACHARY T. FARDON
United States Attorney

By: s/ Douglas G. Snodgrass
DOUGLAS G. SNODGRASS
Assistant United States Attorney
219 South Dearborn Street
Chicago, Illinois 60604
(312) 886-2065
douglas.snodgrass@usdoj.gov