UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DANA CAPLAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 14 C 8235 |
| v. | ) | |
| | ) | Judge Sara L. Ellis |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

Plaintiff Dana Caplan receives medical treatment at the Government-run Captain James A. Lovell Federal Healthcare Center ("Lovell") in North Chicago, Illinois, which provides motorized scooters to Veterans Affairs ("VA") patients to assist their mobility in the health center. Caplan received a scooter before a medical appointment in March 2012, and when the scooter tilted, he tried to stop it with his leg and tore his quadriceps tendon. Caplan alleges that the Government gave him a scooter that was inappropriate for his weight and size and that the Government is liable under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b)(1). The Government has filed a motion for summary judgment on Caplan's FTCA claim and to limit the amount of damages that Caplan may recover [20], and Caplan has filed a cross-motion for summary judgment [26]. Because Caplan affirmatively abandons any claim that the Government breached a duty to warn Caplan about the scooter, the Court grants the Government's motion for summary judgment. Further, the Court denies Caplan's cross-motion because he has not shown that he can bring any tort claim other than a duty to warn claim. Because the Government is entitled to summary judgment on Caplan's claims, the Court denies the Government's motion to limit Caplan's damages as moot.

# BACKGROUND[1]

Caplan has received medical treatment at Lovell since 1999. During that time, Lovell has provided motorized scooters to VA patients to assist their mobility in the health center. In 2008, Caplan had foot and leg problems, so he asked for a motorized scooter. The VA instructed Caplan on the general safety of scooter use, and Caplan passed a scooter driving exam that made him eligible for scooters from the VA in 2008.

During the relevant time periods in Caplan's case, the VA loaned two types of scooters at Lovell, the Pride Maxima and the Pride Victory 9. Both have three wheels. Maxima scooters have a weight limit of 400 pounds, and the smaller Victory 9 scooters have a 300-pound weight limit. There are visible differences between the Maxima and the Victory 9 scooters: they have different seats, the Maxima is much larger and is labeled "Maxima," and the Victory 9 is labeled "Victory 9." The scooters that the VA loans out to patients for use in Lovell are kept at Lovell's circle-drive entrance, which provides valet service for patients who drive. The keys to the loaner scooters are kept in a container at the front desk that is situated at the entrance's two sets of automatic doors.

Caplan is 6'5" and weighs more than 420 pounds, and the VA gave him two Maxima scooters to keep for his personal use. Normally, Caplan used these two Maxima scooters to move throughout Lovell during his visits there (his personal truck was capable of carrying, loading, and unloading a scooter); when he did not use his own Maxima scooters he used Maxima scooters loaned to him at Lovell.

---

[1] The facts in this section are derived from the Joint Statement of Undisputed Material Facts. The Court has included in this background section only those portions of the statement and facts from parties' responses that are appropriately presented, supported, and relevant to resolution of the pending motion for summary judgment. All facts are taken in the light most favorable to the non-movant, and for the cross-motions here, the Court views the evidence in the light most favorable to the party against whom each motion is under consideration.

On March 9, 2012, Caplan was scheduled for physical therapy appointment at Lovell. His personal scooter had a battery issue, so he called the VA in advance of the appointment to reserve a scooter at Lovell. He identified himself, and his weight, to whomever was on the line, though Caplan does not recall to whom he spoke, and he requested a "fat boy scooter" because he weighed over 400 pounds.

When Caplan arrived at Lovell for the March 9 appointment, Caplan pulled into the circle drive entrance. Vocational rehabilitation unit ("VRU") patient Daryl Thomas was assigned to work the front desk at the circle drive entrance. Valets Steven Negron and Nathaniel Forcier, employees of Advantage Valet, a valet company hired as an independent contractor by the VA, were working the valet stand at the circle drive entrance.

Caplan waited for the valet to take his car. When the valet came out to Caplan's car, Caplan gave his name and stated that he needed a scooter. The VA can refuse to give scooters to patients who cannot operate the scooter safely, in which case the patient must accept a wheelchair or wait for scooter the patient can safely operate. The valet left and returned with a Victory 9 scooter, telling Caplan that it was the only scooter with a charge available. Caplan recognized the scooter as a Victory 9 scooter, reading the "Victory 9" written across its side. Believing that the Victory 9 was the only scooter available for him to use and fearing he would be late for his appointment, Caplan mounted the scooter and found that he fit on the seat and the scooter operated the same way as the other scooters he had used. Caplan drove the scooter, moving approximately 1 mile per hour, and then he made a "U" turn, going back the way he came. As he started to pass the back of his truck, the scooter tipped to his right. He stuck out his right leg, stopping the scooter from tipping but tearing his right quadriceps tendon. After hurting his leg, he was wheeled to the emergency room in a wheelchair.

The only two valets working that day were Negron and Forcier. Caplan does not know the name of the valet who brought him the Victory 9 scooter, nor had he seen him before March 9, 2012. Negron denied he brought the Victory 9 to Caplan; Forcier testified he might have brought the Victory 9 to Caplan. But both valets denied they would ever take a key to a scooter without permission from the person working at the entrance's front desk who was responsible for the keys. Forcier did not remember who was working the Lovell front desk at the circle drive entrance, but he believed it could have been either a volunteer or VRU patient.

Thomas, scheduled to work at the front desk at the time of Caplan's arrival, testified that he had never seen a valet bring a scooter out to a VA patient and denied giving a valet a key to bring a scooter out to a patient. The front desk is not to be left unsupervised; if the person working the desk must leave, they are to be relieved by another VRU patient, volunteer, or employee working at the quarterdeck[2] desk.

On November 14, 2013, Caplan filed a claim for damages with the VA, stating the amount of his claim was $500,000.00. However, Caplan testified that, before November 14, 2013, he filed a prior claim for damages with the VA in which he stated the amount of his claim was $500,000.00 plus additional civil veteran pay of $3,000 a month.

**LEGAL STANDARD**

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. To determine whether a genuine issue of fact exists, the Court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed. R. Civ. P. 56 & advisory committee's notes. The party

---

[2] The parties do not define the term "quarterdeck," but apparently it is a nickname for the main desk that is staffed by VA employees and volunteers.

seeking summary judgment bears the initial burden of proving that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). In response, the non-moving party cannot rest on mere pleadings alone but must use the evidentiary tools listed above to identify specific material facts that demonstrate a genuine issue for trial. *Id.* at 324; *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), the Court must construe all facts in a light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). The Court considers each cross-motion separately and views the evidence in the light most favorable to the non-movant of each motion considered. *Lalowski v. City of Des Plaines*, 789 F.3d 784, 787 (7th Cir. 2015).

## ANALYSIS

**I.  Summary Judgment Briefing Issues**

Before addressing the merits of Caplan's claim, the Court must address procedural issues raised by the parties at the summary judgment stage. In reply to its motion for summary judgment and opposition to Caplan's cross-motion, the Government asks the Court to reject facts that Caplan has included in his memorandum supporting his combined cross-motion for summary judgment and response to the Government's motion for summary judgment. The Government takes issue with these facts because they are not presented in the parties' joint statement of facts, are not clearly in support of Caplan's cross-motion or his opposition to the Government's own motion, or are unsupported.

5

The Court's rules on summary judgment practice are clearly stated in its case procedures, requiring that parties comply with Local Rules 56.1(a)(1)–(2) and 56.1(b)(1)–(2) and the Court's other rules on summary judgment. Judge Sara L. Ellis, Case Procedures, Summary Judgment Practice, *available at* https://www.ilnd.uscourts.gov/judge-info.aspx?VyU/OurKKJRDT+FUM5tZmA==. When moving for summary judgment, the moving party must rely on a joint statement of undisputed material facts, which the parties agree are not in dispute, filed separately from the movant's memoranda of law and supported by citations to admissible evidence. *Id.* This applies to cross-motions as well. To oppose a motion for summary judgment, the non-moving party may "include facts in its response that it contends are disputed in order to demonstrate that a genuine issue of material fact exists that warrants denying the motion for summary judgment," supporting these facts with citations to supporting material. *Id.*

Caplan's opening memorandum's statement of facts and argument both include undisputed facts that should have been presented in the joint statement of undisputed facts.[3] Doc. 28 at 2–7. He has also attached three exhibits, styled as "Exhibits 10, 11, and 12," which he cites in his memorandum and his reply, that were not joined to the joint statement of undisputed facts and that were not relied on for any of the undisputed facts included in the joint statement. Doc. 28-1; Doc. 28-2; Doc. 28-3. Caplan also cites undisputed facts from the joint statement both with citation to the joint statement and, confusingly, without citation to the joint statement. *See, e.g.,* Doc. 28 at 8 (citing Doc. 22-3 at 26:20–27:11 instead of citing Doc. 22 ¶ 32). The Court only considers facts presented in the joint statement of undisputed facts and properly presented in response to each parties' motion and cross-motion for summary judgment.

---

[3] Though, confusingly, while contending that Caplan's additional facts should have been filed in the joint statement, the Government also states that it disputes all facts he has included.

Because the extraneous and often incorrectly cited facts cited by Caplan are not material to the Court's analysis, the Court proceeds to the merits of the parties' motions.

## II. Merits of Caplan's Federal Tort Claims Act Claim

Caplan alleges that the Government negligently allowed him to use the Victory 9, causing his accident and injuries. The Government moves for summary judgment, arguing that Caplan cannot prove that a federal employee was responsible for providing the Victory 9 to Caplan and that, even if he could, he could not prove that supplying the Victory 9 breached any duty owed to Caplan. Caplan moves for summary judgment in his favor, arguing that the facts unequivocally show that the Government breached a duty it owed him, causing his injuries.

The United States cannot be sued without its consent, but it is well recognized that the FTCA waives sovereign immunity for certain torts "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C.A. § 1346(b)(1). Courts look to the law of the state where the harm occurred to determine whether an act was negligent or wrongful, and the parties do not dispute that the law of Illinois, the location of Lovell, applies to Caplan's claim. *Buechel v. United States,* 746 F.3d 753, 763 (7th Cir. 2014). "To establish a claim for negligence under Illinois law, a plaintiff must prove the existence of a duty of care owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately caused by that breach." *Id.* at 763–64.

### A. The Government's Motion for Summary Judgment on a Duty to Warn

The Government argues that—even assuming a Government employee was involved in giving the Victory 9 to Caplan—Caplan cannot prove that there was a breach of a duty owed to

7

him. If there is no legal duty of care owed to the plaintiff, "the defendant cannot be found negligent." *Ballog v. City of Chicago,* 980 N.E.2d 690, 695, 2012 IL App (1st) 112429, 366 Ill. Dec. 597 (2012). "Whether a duty is owed presents a question of law." *Swearingen v. Momentive Specialty Chem., Inc.*, 662 F.3d 969, 972 (7th Cir. 2011) (citation omitted). "[T]o determine the existence of a duty is 'to ask whether a plaintiff and a defendant stood in such a relationship to one another that the law imposed upon the defendant an obligation of reasonable conduct for the benefit of the plaintiff.'" *Vesely v. Armslist LLC,* 762 F.3d 661, 665 (7th Cir. 2014) (quoting *Marshall v. Burger King Corp.*, 856 N.E.2d 1048, 1057, 222 Ill. 2d 422, 306 Ill. Dec. 897 (2006)). A legal duty only exists where the occurrence was "reasonably foreseeable" not just "merely foreseeable." *Timm v. Indian Springs Recreation Ass'n*, 589 N.E.2d 988, 991, 226 Ill. App. 3d 760, 168 Ill. Dec. 588 (1992). There must be "more than a mere possibility of occurrence." *Id.*

Illinois courts have recognized that those giving equipment to others owe a duty to the recipients of the equipment—a duty to warn the recipient about the dangers of using the equipment if the equipment is likely to be dangerous. *Brobbey v. Enter. Leasing Co. of Chicago*, 935 N.E.2d 1084, 1093, 404 Ill. App. 3d 420, 343 Ill. Dec. 856 (2010); *Timm*, 589 N.E.2d at 992 ("A duty to warn exists where there is unequal knowledge, actual or constructive, and the defendant, possessed of such knowledge, knows or should know that harm might or could occur if no warning is given."). This duty to warn is well-recognized as an adoption of the position taken by the Second Restatement of Torts § 388. *Smith v. Phoenix Seating Sys., LLC*, 894 F. Supp. 2d 1088, 1098–99 (S.D. Ill. 2012); *Huckabee v. Bell & Howell, Inc.*, 265 N.E.2d 134, 137, 47 Ill. 2d 153 (1970); *Pagano v. Occidental Chem. Corp.*, 629 N.E.2d 569, 575, 257 Ill. App. 3d 905, 196 Ill. Dec. 24 (1994).

8

Therefore, Caplan must be able to show that the Government had a duty to warn Caplan because (1) the Government knew or should have known that the Victory 9 was dangerous for Caplan's intended use, (2) Caplan did not know the Victory 9 was dangerous for his intended use, and (3) the Government had no reason to believe that Caplan would realize the danger of using the Victory 9. *Brobbey*, 935 N.E.2d at 1093; *Pagano*, 629 N.E.2d at 575. The Government argues that Caplan has no evidence to prove any of these things to a jury.

Caplan does not attempt to rebut the Government's position; instead he denies that a duty to warn existed. *See* Doc. 28 at 11 ("The defendant has cited a part of the Restatement that has no application to this matter. . . . Mr. Caplan was provided a scooter that does not have any inherent dangerous properties per se [sic] and therefore there would be no duty to warn Mr. Caplan concerning the same."). In fact, Caplan goes even further and proactively abandons any claim that the Government owed a duty to warn. Although his reply in support of his cross-motion for summary judgment was meant to address the Government's opposition to his cross-motion, Caplan treats it as a sur-reply, making it crystal clear for the Court that he does not want to pursue a duty to warn claim:

> **IV. THE DEFENDANT CONTINUES TO MISTAKENLY APPLY RESTATEMENT (SECOND) OF COURT'S [sic] SECTION 388 TO THIS MATTER.**
>
> The defendant has reiterated its assertion that the restatement (second) of torts Section 388 applies to this case. . . . . In the case at bar, there are no allegations of the defendant's failure to warn of some potential inherent danger with the scooter itself. Section 388 of the restatement second of torts has absolutely no relevance to any issue in this matter.

Doc. 33 at 8-9. Normally, the Court would still require the Government to prove that it is entitled to judgment as a matter of law on any duty to warn claim. *See Gerhartz v. Richert*, 779 F.3d 682, 685–86 (7th Cir. 2015) (even if non-movant fails to respond to argument for summary

9

judgment, the movant still must prove no dispute of fact and entitlement to judgment). But Caplan has affirmatively abandoned the duty to warn claim that the Government believed Caplan wanted to bring, so the Court has no choice but to find that the Government is entitled to judgment on the claim. *Compare id.* (finding non-movant's failure to respond to summary judgment argument was at most an admission of fact)*, with Palmer v. Marion County*, 327 F.3d 588, 597–98 (7th Cir. 2003) ("[B]ecause Palmer failed to delineate his negligence claim in his district court brief in opposition to summary judgment or in his brief to this Court, his negligence claim is deemed abandoned.")*, and Perez v. Town of Cicero*, No. 06 C 4981, 2011 WL 4626034, at *3 (N.D. Ill. Sept. 30, 2011) (by defending his tort claim under a different theory than the theory that was established in the complaint and expected by the defendant, the plaintiff abandoned the theory challenged by the defendant' motion for summary judgment). The Court thus grants the Government's motion for summary judgment because Caplan has disclaimed and abandoned any desire or right to bring a duty to warn claim.[4]

### B. Caplan's Cross-Motion for Summary Judgment

Caplan, cross-moving for summary judgment in his favor, is unclear on what claim he wants to bring against the Government, but his arguments appear to separate into two theories: (1) the Government breached a duty to train and supervise persons working at Lovell and (2) the Government and its employees should never have allowed Caplan to use the Victory 9. The Government argues that Caplan's cross-motion does not rely on undisputed evidence properly included in the joint statement of undisputed facts, that Caplan does not even attempt to prove causation, a necessary element of his negligence claim, and that Caplan cannot prove that the Government or any Government employee acted wrongly under any cognizable tort theory. The

---

[4] Therefore, the Court need not address the Government's argument that there is no issue of fact as to whether a Government employee was involved in Caplan's accident.

Court addresses the Government's last argument first because it is dispositive of Caplan's cross-motion.

Caplan did not plead a failure to train and supervise theory in his complaint. Instead, he raises the theory at summary judgment and admits to attempting to amend his complaint to proceed on such a claim. "Under Illinois law, courts 'must consider whether a duty arises within the context of the cause of action actually pleaded, not whether some other theory of liability not pleaded would dictate a different result." *Hasbun v. United States*, 941 F. Supp. 2d 1011, 1015 (N.D. Ill. 2013) (citation omitted). Caplan's complaint does not plausibly allege a failure to train or supervise, and when Caplan formally moved to amend his complaint to add the claim after summary judgment briefing was complete, *see* Doc. 38, the Court denied the motion to amend. *See* Doc. 41; *accord Hasbun*, 941 F. Supp. 2d at 1016 (determining that the plaintiff could not argue at summary judgment that the defendant breached a duty to supervise where the operative complaint did not allege a negligent supervision claim or plead facts plausibly suggesting such a claim). Thus, Caplan cannot obtain summary judgment on a failure to train and supervise theory.

Caplan proposes another theory for tort liability, arguing that the Government had a duty to prevent Caplan from ever using the Victory 9. While he does not articulate this theory well, the crux of his argument is that the Victory 9 was dangerous for Caplan, so the Government violated the law by giving it to him. By arguing that the Government is liable, regardless of the degree of care it could have taken in providing the scooter to Caplan, Caplan is arguing that the Government is strictly liable for the injuries the Victory 9 caused to him. *See Manh Hung Nguyen v. Johnson Mach. & Press Corp.*, 433 N.E.2d 1104, 1109, 104 Ill. App. 3d 1141, 60 Ill. Dec. 866 (1982) ("In strict liability cases, our courts have found an absolute duty of prevention in those parties who can be found to have created the risk of injury by being involved in placing

11

the defective product that has caused injury into the stream of commerce."); *Brobbey*, 935 N.E.2d at 1093 ("Unlike strict liability, under a theory of negligence it is not sufficient to show that the product is defective or not reasonably safe; the plaintiff must also show that the defendant breached a duty owed to plaintiff."); *see also Gillespie Cmty. Unit Sch. Dist. No. 7, Macoupin County v. Union Pac. R. Co.*, 43 N.E.3d 1155, 1194–95, 2015 IL App (4th) 140877, 398 Ill. Dec. 245 (2015) (noting that when a defendant alleges strict liability when it claims the defendant is liable for any action regardless of its degree of care, citing Black's Law Dictionary 926 (7th ed. 1999) ("strict liability" is "[l]iability that does not depend on actual negligence or intent to harm, but that is based on the breach of an absolute duty to make something safe")).

The Court is concerned with Caplan's attempt to obtain summary judgment on a strict liability claim where Caplan has never attempted to bring such a claim before. There is a key difference between the claim that the Government thought Caplan was bringing—a claim of a breach of duty owed by the supplier of equipment, on which the Government sought summary judgment—and the claim that Caplan wants to bring—a claim of strict liability. Simply, a strict liability claim is not a negligence claim because the concept of fault does not exist in a strict liability claim. *See Smith*, 894 F. Supp. 2d at 1098 (noting distinction between negligence theory of failure to warn of potential dangers and strict liability claim). Though the Government does not raise the issue, Caplan's complaint only alleges theories of negligence. For example, he alleges that there was a duty to "exercise ordinary care and caution in the management, distribution and assistance with providing the plaintiff a safe and proper scooter," and a duty to "assist [Caplan] on the scooter in order to determine if it was a proper and safe scooter." Doc. 1 ¶ 14. He also alleges that the Government and its employees were "careless and negligent," listing six ways in which errors caused Caplan's leg injury. *Id.* ¶ 15. The Government does not

raise the point, but by failing to allege a strict liability claim in the complaint, Caplan waived any right to pursue a strict liability claim. *See, e.g., Anderson v. Donahoe*, 699 F.3d 989, 997–98 (7th Cir. 2012) (claims not alleged in the operative complaint are waived and cannot be added at summary judgment because doing so deprives the defendant of fair notice required for pleading). But even if Caplan had pleaded such a claim, it would fail at summary judgment.

Strict liability for a product like a scooter applies to the distributive chain of a product as it enters commerce, but outside the distributive chain, supplying equipment for convenience, even to encourage business, does not make the supplier strictly liable for harms caused by the equipment. *See Feik v. Sieg Co.*, 823 F. Supp. 588, 591–93 (C.D. Ill. 1993) (vise lent to plaintiff was not necessary to defendant's sale of auto parts to plaintiff but instead loaned to plaintiff for his convenience, so defendant could not be held strictly liable for injuries caused by vise); *Timm*, 543 N.E.2d at 542 (refusing to extend strict products liability law to incidental transfer of golf cart by defendant who was not in the business of selling golf carts); *Gilliland v. Rothermel*, 403 N.E.2d 759, 762, 83 Ill. App. 3d 116, 38 Ill. Dec. 528 (1980) (defendant not strictly liable for tire gauge failure where tire gauge was not necessary or integral to defendant's business); *Keen v. Dominick's Finer Foods, Inc.*, 364 N.E.2d 502, 504–05, 49 Ill. App. 3d 480, 7 Ill. Dec. 341 (1977) (shopping cart given to plaintiff to help buy groceries at defendant's store was provided for plaintiff's convenience, so defendant could not be held strictly liable for injuries caused by the shopping cart). Here, the undisputed evidence shows that the VA was outside the distributive chain of commerce for the Victory 9 scooter. The VA was not in the business of supplying scooters to its patients, and the scooters were not necessary or essential to the VA's business with Caplan. Caplan received scooters for his convenience to make his trips to Lovell speedier, and he acknowledges that instead of the Victory 9, he could have received a wheelchair or

waited for another scooter at the expense of being late to his appointment. Caplan presents no evidence that would allow him to prove that the Government could be held strictly liable for the injuries caused by the Victory 9. Therefore, the Court denies Caplan's cross-motion for summary judgment in its entirety.

### III. The Government's Motion to Limit Damages

Finally, the Government moves to cap the amount of damages Caplan may recover, arguing the Court has no jurisdiction to award damages exceeding the amount sought in Caplan's administrative claim to the VA. Caplan asserts that the Government lost his original claim form demanding more than $500,000.00, so he should be allowed to pursue the $1,205,600.00 that he demanded in his complaint. The Government disagrees and argues that Caplan's damages are capped at the amount of money he specified in his demand form that the Government denied. The Government's request is moot because Caplan abandons the only tort claim he could bring, entitling the Government to summary judgment on Caplan's claims.

## CONCLUSION

For the foregoing reasons, the Court grants the Government's motion for summary judgment [20], because Caplan explicitly abandons any duty to warn claim, and denies Caplan's cross-motion for summary judgment [26]. Because Caplan has no claims alleged in his complaint that he can pursue at a trial, the Court denies the Government's request to limit damages as moot. The Court grants judgment to the Government.

Dated: September 8, 2016

_____
SARA L. ELLIS
United States District Judge